IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUISA P., individually and as Parent and | : | |
| Natural Guardian of H.R.P., a minor | : | |
| | : | NO. 17-0268 |
| Plaintiffs, | : | |
| v. | : | THE HONORABLE |
| | : | JOSEPH F. LEESON, JR. |
| EASTON AREA SCHOOL DISTRICT, | : | |
| COLONIAL INTERMEDIATE UNIT 20, MAXIM | : | |
| HEALTHCARE SERVICES, INC., JACKIE | : | |
| BARTEK, MARC BERNSTEIN, CHARLENE | : | |
| BRENNAN, ELIZABETH BRILL, TODD | : | |
| CAMPBELL, ANNA GOCEK, MICHELLE | : | |
| HARRIS, PHYLLIS HEIL-HENRY, CRYSTAL | : | |
| LUCKENBACH, DIANE MOORE, GINA NICOL | : | |
| ADE O., JANINE PAGE, JAIME PETERS | : | |
| (VLASATY), JOHN REINHART, | : | |
| CHRISTOPHER WOLFEL,  and JOHN (JANE) | : | |
| DOES #1-10, | : | |
| Defendants. | : | |

**BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD ON COUNT I OF PLAINTIFFS' COMPLAINT AND DEFENDANT EASTON AREA SCHOOL DISTRICT'S COUNTERCLAIM ON COUNT I ON BEHALF OF DEFENDANT EASTON AREA SCHOOL DISTRICT**

## I.     PROCEDURAL HISTORY

Plaintiffs commenced this matter on January 18, 2017, by filing a Complaint asserting

claims under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*("IDEA"),

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §  794 ("Section 504"), and Title II of

the Americans with Disabilities Act, 42 U.S.C. § 12131, along with various other claims not

pertinent to the current motion.  (*See* Compl. ¶ 1 (Doc. 1)).   Count I of Plaintiffs' Complaint is

an appeal under the IDEA and Section 504 of an administrative hearing officer decision issued

on November 7, 2016, regarding the provision of a free and appropriate public education

("FAPE") seeking to reverse a portion of the decision and seeking to affirm the remainder of the

decision. (*See* Compl. ¶¶ 158-164 (Doc. 1)). Defendant Easton Area School District ("District") filed a counterclaim to Count I on June 21, 2017, seeking a reversal of the hearing officer's decision. (Counterclaim on Behalf of Easton Area School District Against Plaintiff (Doc. 43)). The parties have stipulated to the severance of Count I of the Complaint from the remainder of the case. (*See* Stip. to Bifurcate Count I (Doc. 44-2)). District has filed a Motion for Judgment on the Administrative Record as to Count I of the Complaint and its Counterclaim against Plaintiffs and now files the herein brief in support of the same.

## II.     STATEMENT OF FACTS RELEVANT TO THE MOTION

Student is a pre-teen aged student in the District who has cerebral palsy, microcephaly, a seizure disorder, swallowing difficulties, and is legally blind. (H.O. Dec. at 3). Student has been identified under the IDEA exceptionality of multiple disabilities and placed in a multiple disabilities classroom during the relevant timeframe. (*Id.*). During the timeframe under review, as noted more in depth below, the Student was provided with appropriate related services and made educational progress in various areas, including the area of activities of daily living, such as dressing, feeding and toileting. In addition, while the Parent's native language is not English, the record showed that Parent has communicated with the District about concerns she had, at IEP meetings and even during the Hearing without a translator.

Parent filed a special education due process complaint on May 16, 2016. (Compl. ¶ 57). After three days of hearing, the Hearing Officer issued a decision finding in favor of Parent on most of the claims. (H.O. Dec. at 1-2) More specifically, the Hearing Officer found the District denied the Student a FAPE by (1) the failure to provide an appropriate education in the area of activities of daily living, (2) the failure to provide PCA, (3) failing to continue "bi-lingual programming given that Student's maternal language is not English", and (4) not providing

physical therapy and vision therapy. (H.O. Dec. at 22). In addition, the Hearing Officer found that the District failed to provide the Parent with meaningful participation in the IEP process on the basis that the Parent's native language was not English and that the District discriminated against the Student on the basis of his disability under Section 504, however, this finding was based upon the denial of a FAPE and other procedural errors found by the Hearing Officer. (*Id.*) As relief, the Hearing Officer ordered placement at a placement chosen by the Parent for an unspecified period of time and ordered that said placement be the pendant placement. (*Id*). This appeal followed by both parties.

### III. QUESTION INVOLVED

**A. SHOULD THE HEARING OFFICER'S RULING THAT THE STUDENT WAS DENIED A FAPE IN THAT (1) THE STUDENT WAS NOT PROVIDED AN APPROPRIATE EDUCATION IN THE AREA OF ACTIVITIES OF DAILY LIVING, (2) STUDENT WAS NOT PROVIDED A PCA AS SPECIFIED IN THE IEP, (3) WAS NOT PROVIDED BI-LINGUAL PROGRAMMING, AND (4) WAS NOT PROVIDED PHYSICAL THERAPY AND VISION THERAPY BE REVERSED WHEN SAID FINDINGS ARE NOT SUPPORTED BY THE RECORD?**

**SUGGESTED ANSWER: YES.**

**B. SHOULD THE HEARING OFFICER'S FINDING THAT THE DISTRICT FAILED TO PROVIDE THE STUDENT'S PARENT WITH MEANINGFUL PARTICIPATION IN THE IEP PROCESS AND THAT THE SAME LEAD TO A DENIAL OF A FAPE BE REVERSED WHEN SAID FINDINGS ARE NOT SUPPORTED BY THE RECORD BEFORE THE HEARING OFFICER?**

**SUGGESTED ANSWER: YES.**

**C. SHOULD IT BE FOUND THAT THE HEARING OFFICER ERRED IN AWARDING THE PARENT'S REQUESTED PLACEMENT AS THE RECORD FAILS TO ESTABLISH THAT THE PLACEMENT IS APPROPRIATE AND THERE IS INSUFFICIENT EVIDENCE TO ESTABLISH THAT THE PLACEMENT WOULD MAKE THE STUDENT WHOLE MAKING THIS IS AN INAPPROPRIATE FORM OF COMPENSATORY RELIEF?**

**SUGGESTED ANSWER: YES.**

**D. GIVEN THAT THE STUDENT WAS PROVIDED A FAPE AND MADE MEANINGFUL PROGRESS, SHOULD STUDENT BE DENIED COMPENSATORY EDUCATION OR, TO THE EXTENT IT IS AWARDED, SHOULD IT BE MINIMAL?**

**SUGGESTED ANSWER: YES.**

**E. SHOULD THE HEARING OFFICER FINDING THAT THE DISTRICT VIOLATED SECTION 504 AND PENNSYLVANIA CHAPTER 15 AND ENGAGED IN DISCRIMINATION AGAINST STUDENT ON THE BASIS OF DISABILITY BE REVERSED WHEN THE SAME IS NOT SUPPORTED BY THE RECORD AND IS CONTRARY TO LAW?**

**SUGGESTED ANSWER; YES.**

**IV. SUMMARY OF ARGUMENT**

Under the IDEA, when a court reviews the decision of a special education hearing officer, that decision is entitled to deference unless the decision is not supported by the law, not supported by the nontestimonial evidence, or lacks reasoned and specific findings. In the present case, the record does not support the Hearing Officer's decision and it should be reversed. The Hearing Officer found a denial of a FAPE based upon the purported failure to provide vision and physical therapy, when the record shows it in fact was provided. The Decision finds that a FAPE was not provided in the area of activities of daily living, including feeding, dressing and toileting, when the record shows these areas were programmed for and that the Student made progress in these areas. The Hearing Officer found that the District failed to provide a FAPE by failing to provide bilingual education, but the record reveals no evidence that it was in fact necessary. The Decision finds that a FAPE was denied on the basis that a PCA, a designated one to one aide, was not provided when the record establishes that the IEP team did not find one was

required and that this service in fact was provided by the Student's nurse. The Hearing Officer found that the District denied the Parent meaningful participation due to the fact that English was not the Parent's native language, despite the fact that the record shows the Parent participated in IEP meetings, communication with the District, and the Hearing before the Hearing Officer without a translator and was able to participate fully. While the Hearing Officer found that the Parent's requested placement was appropriate, the record in this case shows that the evidence was insufficient to establish the same and that serious concerns exist as to the placement, which the Hearing Officer did not even address. To the extent that the Court should agree with the Hearing Officer that there was a denial of a FAPE, the proper remedy is not an indefinite placement at an inappropriate school, but rather compensatory education and that amount must be supported by the record. Finally, the Hearing Officer also found that the District violated Section 504 and Pennsylvania Code Chapter 15, but these findings are based upon the other findings of a denial of a FAPE and other procedural violations and, to the extent said findings should be reversed, should the Hearing Officer's findings regarding Section 504 and Chapter 15. According, the Hearing Officer's Decision should be reversed under the applicable standard or review and an appropriate order entered.

V.     ARGUMENT

A. STANDARD FOR REVIEW OF ADMINISTRATIVE RECORD UNDER THE IDEA.

The Third Circuit Court of Appeal has set forth the following standard of review when a federal District Court reviews an IDEA Hearing Officer Decision:

> When a district court reviews an administrative law judge's decision, a court of appeals exercises plenary review over the court's legal conclusions, and reviews its findings of fact with a "modified de novo" standard of review (giving the administrative factual findings "due weight" and considering them to be prima facie correct) for clear error.

*Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 266 (3d Cir. 2014). It has been further explained, "[a] federal district court reviewing the administrative fact finder in the first instance is similarly required to defer to the ALJ's factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record." *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). However, "[w]hen the hearing officer's determination does not contain 'reasoned and specific findings' it 'deserves little deference.'" *N.W. v. D.C., No. CV 16-0573 (RC)*, 2017 WL 2080250, at *8 (D.D.C. May 15, 2017) *quoting Kerkam ex. rel Kerkam v. Superintendent, D.C. Pub. Sch.*, 931 F.2d 84, 87 (D.C. Cir. 1991). As a result, where a Hearing Officer's factual findings are contradicted by the non-testimonial evidence, is not supported by the record, or is contrary to law, the Court may properly reverse the findings of the Hearing Officer, so long as it explains its rationale for the same. *See e.g. Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 273 (3d Cir. 2012)(affirming a district court's reversal of a Hearing Officer Decision inconsistent with the documented evidence in the case and when decision was internally inconsistent). Applying this standard to the current matter, for the reasons outlined below, the Hearing Officer's Decision in the current matter is not entitled to deference and should be reversed.

### B. THE HEARING OFFICER'S FINDING THAT THE STUDENT WAS DENIED A FAPE IS NOT SUPPORTED BY THE RECORD OR, IN THE ALTERNATIVE, THE DEGREE TO WHICH THE STUDENT WAS DENIED A FAPE WAS OVERSTATED BY THE HEARING OFFICER.

The United States Supreme Court recently explained that, "[t]o meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999, 197 L. Ed. 2d 335 (2017). "Any review of an IEP must appreciate that the question is whether the IEP is *reasonable*, not whether the court

regards it as ideal." *Id.* (emphasis supplied). Applying this principal, it has been explained "[w]e give deference to the District where it 'offer[s] a cogent and responsive explanation for their decisions that shows the IEP is reasonably calculated to enable the child to make progress appropriate in light of his circumstances.'" *E.G. v. Great Valley Sch. Dist.*, No. CV 16-5456, 2017 WL 2260707, at *3 (E.D. Pa. May 23, 2017) *quoting Endrew F., supra.* Furthermore, "[t]he court may not substitute its 'own notions of sound educational policy for those of the school authorities.'" *T.M. on behalf of T.M. v. Quakertown Cmty. Sch. Dist.*, No. CV 16-3915, 2017 WL 1406581, at *3 (E.D. Pa. Apr. 19, 2017) *quoting Endrew F. supra.* Applying this standard to the current matter, for the reasons outlined below, the Hearing Officer erred in finding that the District did not provide the Student with a FAPE or, in the alternative, to the extent to which it denied the Student with a FAPE as there is insufficient evidence to support the Hearing Officer's findings.

In this case, the Hearing Officer found that the Student was denied a FAPE in four specific areas: (1) the failure to provide an appropriate education in the area of activities of daily living, (2) the failure to provide PCA, (3) failing to continue "bi-lingual programming given that Student's maternal language is not English", and (4) not providing physical therapy and vision therapy. (H.O. Dec. at 22). For the reasons detailed below, the record in this matter does not support the Hearing Officer's conclusions in this regard and, therefore, should be reversed.

**1. The Hearing Officer's finding that District denied the Student a FAPE by failing to provide physical therapy and vision therapy is not supported by the record.**

With respect to physical therapy, no witnesses even testified about this issue and, accordingly, Parent failed to present any evidence that the level or manner of services in these areas was not appropriate. Despite the lack of any evidence on this issue, the Hearing Officer found that the District denied the Student a FAPE by failing to provide physical therapy, but

offers no explanation for the same. (H.O. Dec. at 21-22). The only finding of fact offered on this issue was that the Student had been provided physical therapy in the past, purportedly did not meet his goals, and physical therapy was removed without objection from the Parent from the IEP in 2014 and 2015. (H.O. Dec. at 10 *citing* S-19 (5-31-12 IEP) and S-26 (5-22-13 IEP)). However, the record in this case reveals, and the Hearing Officer ignored, that the Student underwent a physical therapy evaluation in May of 2013, which found that the Student had made progress in physical therapy and needed a lower level of support, and was evaluated again in April of 2015, which found Student was no longer in need of physical therapy other than consultative services, which were provided for in the 2014 and 2015 IEP's. (S-24 (5-14-13 PT Evaluation); S-44 at 10 (4-17-15 RR); S-33 at 30 (4-24-14 IEP); S-45 at 38 (4-22-15 IEP). Finally, physical therapy was added back into the IEP in 2016. (S-52 at 34 (4-22-16 IEP). In sum, the evidence in this case shows that the Hearing Officer's finding regarding physical therapy is not support by the record and, in fact, the record shows that the District evaluated the Student's needs in the area of physical therapy, offered services consistent with those recommendations, and no evidence was presented that would even suggest the recommendations or services provided were improper. Accordingly, the Hearing Officer's finding that the manner in which the District addressed the issue of physical therapy is not only not supported by the record, it is directly contradicted by it, and, therefore, under the of review, the Hearing Officer's finding in this regard must be reversed.

The Hearing Officer further found that the District denied the Student a FAPE by failing to provide the Student vision therapy, but again offers little explanation for this finding. (H.O. Dec. at 21-22). The record in this case reveals that the Parent raised this concern in April of

2014,[1] and an outside evaluation was done later that spring. (S-33 at 14 (4-24-14 IEP); S-34 (Eye Institute Evaluation faxed to District on 9-4-14). However, the team looking at this issue in 2014 had a limited amount of information available to it and properly proposed to do an evaluation within several weeks of receiving the outside report to look at this issue further, an approach found appropriate by the only witnesses with an extensive background in the area of vision services and a witness the Hearing Officer apparently found credible. (N.T. p. 669 (Hopstetter); S-38 (9-26-14 PTRE); H.O. Dec. at 13-14). Parent returned the form permitting the District to conduct an evaluation a month later and the District, after conducting the evaluation, added vision services to the IEP in December of 2014. (S-38 (9-26-14 PTRE); S-41 at 6 (12-22-14 IEP Revision). In addition, vision services were provided for in the 2015 and 2016 IEP's. (S-45 at 38 (4-22-15 IEP); S-52 at 52 (4-22-16 IEP)). Furthermore, the Hearing Officer did not find and there is no evidence in the record to suggest that the vision services provided were improper. As a result, the Hearing Officer's Decision that the Student was not provided vision services is not supported by the record, but rather the record directly contradicts this finding. Again, this finding should not survive the standard of review applicable to this matter.

Accordingly, it should be found that the Hearing Officer's finding that the Student was denied a FAPE due to the failure to provide physical therapy and vision therapy is not supported by the record, but rather directly contracted by it, and, therefore, this finding must be reversed.

---

[1] It is noted that Parent may attempt to assert this claim for the timeframe beyond May of 2014. However, claims based upon this issue are barred by the applicable statute of limitations, as claims on the provision of a FAPE were limited to two years by the Hearing Officer and only claims for failure to implement the IEP, which could not exist with respect to this service, were permitted beyond that two year window and Plaintiffs have not appealed the Hearing Officer's Decision on the statute of limitations. (See N.T. pp. 137-138; Compl.). As a result any claim related to vision therapy prior to May 2014 is untimely. (*Id.*, Compl. ¶ 57).

**2.  The Hearing Officer's finding that Student was denied a FAPE in the areas of the Activities of Daily Living is not supported by the record**

The Hearing Officer in this matter, contrary to the record, opined "goals for activities of daily were either never considered by the IEP team or considered and rejected." (H.O. Dec. at 20).  By way of background, one of the main complaints raised by the Parent in this case as to what they claim to be the denial of a FAPE, was the alleged failure to properly address the Student's needs in the area of activities of daily living, more specifically self-feeding, toileting, and dressing.  (*See e.g.* N.T. pp. 429 (Pardini); 245 (Moisengo)).  However, the Parent's argument on this issue and the Hearing Officer's finding noted above are simply not supported by the record and, accordingly, must be reversed under the applicable standard of review.

On the issue of feeding, the evidence in this case shows that this skill was worked on with the Student, addressed in the IEP's, and that the Student made progress on skills related to eating.  While Parent appears to suggest that more should have been done in this area, although none of the Parent's experts explained what it is that they believed should have been done, it has been found that where feeding is addressed in the IEP and the Student makes progress in this area, the LEA has met its obligations of providing the student with a FAPE in the area of feeding.  *See L.M. v. E. Meadow Sch. Dist.*, 11 F. Supp. 3d 306, 315 (E.D.N.Y. 2014).  In the present case, evidence was shown that the skill of eating, even if there was not a specific goal directly related to it in the IEP, was addressed and worked on in the class room on a daily basis. (N.T. pp. 608, 628 (Page)).  In addition, progress was noted in the Student's ability to feed himself and to use a spoon and fork, going from using only a spoon in 2014 to using a fork and spoon in 2016. (N.T. pp. 607-608 (Page); S-52 at 12 (4-22-16 IEP); S-31 at 10 (4-24-14 IEP)). Furthermore, the Student's self-feeding skills were measured via the Carolina Curriculum each year and the Student was provided with a grasping goal in his IEP, which was directed to the

underlying skills need to self-feed in terms of using silverware, as the Student was already able to eat with his fingers, and the Student made progress on the goal of grasping. (*Id.*; N.T. p. 657 (Page)). The Hearing Officer, despite finding that a FAPE was denied in this area, notes that in fact progress was made, but faults the District because the Student had not gained independence yet. (H.O. Dec. at 8, ¶ 46). However, the Student's eating needs were addressed and the Student made progress in this area and there is simply no evidence to suggest that it would be reasonable for the Student to reach independence in this area over the relevant timeframe. Accordingly, it should be found that Student was provided a FAPE in this area, as this area was programed for and the Student made progress, and the Hearing Officer's determination to the contrary reversed as not supported by the record.

Moving to the issue of dressing, again this issue was addressed in the Student's IEP and the Student made progress, contrary to the Hearing Officer's Decision. More specifically, the IEP contained a goal for the Student to work on the dressing skill of putting on a garment. (S- 45 at 32 (4-22-15 IEP); S-49 at 10 (April 2016 Progress Monitoring)). In addition, as was explained by the Student's teacher, the Student made progress on this goal going from being able to do none of the steps of putting on a garment to doing 2 or 3 of the 5 steps required to do so. (N.T. pp. 599-601 (Page)). This area was also measured via the Carolina Curriculum, which shows that from the spring of 2014 to the spring of 2016 Student had gained skills in this area. (*See* S-31 at 10 (5-22-13 IEP); S-52 at 12 (4-22-16 IEP)). Again, the IEP's offered addressed this area of need and the Student made progress in this area, which belies the Parent's claim to the contrary and the Hearing Officer's finding. The Hearing Officer in this matter appears to suggest that more should have been done in this area, but fails to identify in any respect what or how it is that what

was done was inappropriate.  (*See* H.O. Dec. at 8). Accordingly, the Hearing Officer's finding that the Student was denied a FAPE in the area of dressing should be reversed.

Lastly, the Student's needs in the area of toileting were addressed. In the present case, the team was starting to work on some toileting needs with the Student through the use of a schedule or chart. (S-33 at 28 (4-24-14 IEP)).   In addition, as was explained by the Student's one special education teacher this was not an area that was targeted, as other areas were worked on. (N.T. pp. 565-66 (Gocek)). Moreover, this skill was monitored through the use of the Carolina Curriculum. (N.T. p. 657 (Page)). Of note, in the case of *McKay v. Sch. Bd. of Avoyelles Par.*, No. CV 1:15-0508, 2015 WL 9236989, at *9 (W.D. La. Dec. 16, 2015) a court found that where other areas of need, both academic and otherwise, were targeted by the team the failure to address or show progress in the area of toileting for a ten year old student was not sufficient to show a denial of a FAPE.  Accordingly, the Hearing Officer erred in finding that the District did not address this issue and, as a result, the finding that the District denied a FAPE in this area was incorrect or overstated and the Hearing Officer's finding in this regard should be reversed.

Accordingly, it should be found that the District provided a FAPE in the areas of activities of daily living and the Hearing Officer's finding otherwise reversed as there is insufficient evidence to support this finding.

**3.**     **The Hearing Officer's finding that the District failed to provide a PCA and that it was a denial of a FAPE is not supported by the record.**

The Third Circuit Court of Appeals has explained that "[t]o prevail on a claim that a [LEA] failed to implement an IEP, a plaintiff must show that the [LEA] failed to implement substantial or significant provisions of the IEP, as opposed to mere *de minimis* failure, *such that the disabled child was denied a meaningful educational benefit.*"  *Melissa S. v. Sch. Dist. of Pittsburgh*, 183 Fed. Appx. 184, 187 (3d Cir. 2006)(unpublished)(emphasis added) *citing*

*Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000). To prevail on such a claim, the parents must establish that the LEA denied an educational benefit to the student and, not merely, that it denied some service provided for in the IEP. *Id.* Moreover, several cases have found, contrary to Plaintiffs' Counsel's insistence to the contrary, that it is permissible for an IEP team to use an outside service provider to provide a service provided for in the IEP. *See e.g. School Dist. of Philadelphia*, 112 LRP 41992 (Pa. SEA 2012); *Coatesville Area Sch. Dist.*, 113 LRP 29365 (Pa. SEA 2013). In the present case, the Hearing Officer's finding that the District failed to provide a one to one aide is not supported by the record created before the Hearing Officer and the Hearing Officer's own findings.

First, the Parent in this case has failed to show that the District failed to comply with the IEP in the alleged failure to provide personal care assistance or assistant. The IEP's in question provided with "Personal Care Assistant: daily assistance will be provided based on individual student needs in the areas of behavior, safety awareness, remaining on task during instruction, toileting, eating, and dressing." (S-33 at 28 (4-24-14 IEP); S-45 at 36 (4-22-16 IEP); S-52 at 32 (4-22-16 IEP)). However, one of the special education teachers who drafted the IEP's in question explained this did not mean a one to one assigned to the Student, but rather assistance by the teaching staff in the classroom, and explained that different terminology would have been used describe this service if it meant a one to one aide assigned to this Student. (N.T. pp. 648-49 659-61 (Page)). However, the Hearing Officer improperly ignored this testimony and in fact revealed she had no intention of even considering this issue having prejudged this issue before this witness even explained this portion of the IEP. (*See* N.T. 486-487 (Hearing Officer explaining what she believed personal care assistant meant prior to testimony from teacher who wrote the IEP)). In sum, the Hearing Officer having predetermined what she believed a term to mean in an

IEP found the IEP was not implemented prior to even hearing testimony from the witness who wrote the IEP in question. Accordingly, the Hearing Officer's finding in this regard should be reversed.

Moreover, even if one were to disregard this witnesses explanation of what was meant in the IEP, as was explained by the Student's nurse, this service was still provided by the nurse. In fact, the nurse explained that she did these things that were described in the IEP anyway. (N.T. pp. 258-59 (Moisengo)). Simply put, the evidence in this case shows that the Student did receive this service. In a desperate attempt to justify the finding that a PCA was not provided, the Hearing Officer's Decision attempts to twist testimony to find that no PCA was provided, but also finds that "[t]he IU exclusively used the nurse in place of a PCA for Student." (H.O. Dec. at 5, ¶ 23). As a result, the Hearing Officer's own findings undercut the conclusion the District failed to provide the one to one aide provided for by the IEP, as the nurse served in this role.

Accordingly, the Hearing Officer's finding that the Student was denied a FAPE due to the alleged failure to provide a one to one aide is in error because the IEP did not require one and one in fact was provided by the Student's nurse during the last two school years.[2]

> **4.** **The Hearing Officer's finding that the Student was denied a FAPE based upon the alleged failure to provide bilingual education is an error of law and not supported by the record.**

The Hearing Officer in this matter found that the District denied the Student a FAPE by "[n]ot continuing bi-lingual programming given that Student's maternal language is not English", but includes no explanation whatsoever as to how this purportedly lead to a denial of a

---

[2] It is noted that Parent attempted to assert this claim for the timeframe beyond the last two school years. However, the evidence in clear that this service was not provided for in the prior IEP's. (N.T. pp. 221-22 (Brill); S-26 (5-22-13 IEP); S-19 (5-31-12 IEP). Accordingly, claims based upon this issue are barred by the applicable statute of limitations, as claims on the provision of a FAPE have been limited to two years and only claims for failure to implement the IEP, which could not exist with respect to this service, were permitted beyond that two year window. (*See* N.T. pp. 137-138). Furthermore, Parent has not appealed the Hearing Officer's determination on the statute of limitations issue. (*See* Compl.).

FAPE. (H.O. Dec. at 22). The only findings of fact issued by the Hearing Officer in this regard were that the Student at one time received ESL services and they were ended in 2011. (*Id.* at 10). There are no findings that would support the Hearing Officer's determination that this service was necessary for the Student during the timeframe under consideration. While it is correct that in 2011, it was reported that he Student understood instructions in Spanish and that Spanish was the primary language spoken at home, although English was also reported in the home, by March of 2015, Parent was reporting that the Student also understood English. (S-14 at 5 (6-1-11 RR); S-44 at 4 (4-17-15 RR)). Furthermore, it appears that this determination was based in large measure by the conclusion reached by the Hearing Officer as to the Parent's limited ability to speak English, which as noted below is not supported by the record. Finally, in order to establish that the failure to instruct a student in his or her native language lead to a denial of a FAPE, it must be found that it created language barriers that prevented the student from making adequate educational progress. *See M.W. v. Clarke County Sch. Dist.*, 2008 WL 4449591, *18 (M.D. Ga. 2008). In the present case, the Hearing Officer's Decision erred in reaching the conclusion that the Student needed to be educated in another language as this conclusion is undercut by the record, is based upon an incorrect conclusion as to the Parent's English skills, and because there is no evidence that this language skill issue limited the Student's ability to make educational progress. Accordingly, the Hearing Officer's Decision in this regard should be reversed.

**C. THE HEARING OFFICER ERRED IN FINDING THAT THE DISTRICT FAILED TO PROVIDE THE STUDENT'S PARENT WITH MEANINGFUL PARTICIPATION IN THE IEP PROCESS AND THAT THE SAME LEAD TO A DENIAL OF A FAPE AND SAID FINDINGS ARE NOT SUPPORTED BY THE RECORD BEFORE THE HEARING OFFICER.**

While the Hearing Officer's Decision contains no discussion of this issue, the Hearing Officer ruled that the District "denied the Parent meaningful participation, including the failure to communicate with her in her native language during IEP meetings, not providing documents translated into her native language, and failing to inform her of the specific supports that Student was not receiving." (H.O. Dec. at 22). The Hearing Officer further found that this led to a denial of a FAPE asserting that "had mother understood all aspects of the District's programming, she would have been able to more effectively intervene on her child's behalf to secure appropriate programming." (*Id.*). Of note, however, the Hearing Officer's Decision contains no explanation of how this conclusion was reached. (*See* H.O. Dec. at 19-21).

In terms of meaningful progress under the IDEA, one court has explained,

> Parents must have the opportunity "to participate in meetings with respect to the identification, evaluation, and educational placement of the child." *H.B. v. Las Virgenes Unified Sch. Dist.*, 239 F. App'x 342, 344–45 (9th Cir.2007) (*quoting* 20 U.S.C. § 1415(b)(1)). Ninth Circuit cases emphasize that parents must be invited to attend IEP meetings and must have the opportunity for meaningful participation in the formulation of IEPs. *See Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 317 F.3d 1072, 1078 (9th Cir.2003) ("The IDEA 'imposes upon the school district the duty to conduct a meaningful meeting with the appropriate parties.'") (*quoting W.G. v. Board of Trs. of Target Range Sch. Dist.* No. 23, 960 F.2d 1479, 1483 (9th Cir.1992). Thus, "[a] school district violates IDEA procedures if it independently develops an IEP, without meaningful parental participation, and then simply presents the IEP to the parent for ratification." *Ms. S. v. Vashon Island Sch. Dist.*, *3*37 F.3d 1115, 1131 (9th Cir.2003).

*Z.F. v. Ripon Unified Sch. Dist.*, No. 2:11-CV-02741-KJM, 2013 WL 127662, at \*6 (E.D. Cal. Jan. 9, 2013) *see also Gibson v. Forest Hills Sch. Dist. Bd. of Educ.,* No. 1:11-CV-329, 2013 WL 2618588, at \*26 (S.D. Ohio June 11, 2013), *aff'd sub nom. Gibson v. Forest Hills Local Sch.*

*Dist. Bd. of Educ.*, No. 14-3575, 2016 WL 3771843 (6th Cir. July 15, 2016). "A parent has meaningfully participated in the development of an IEP when, for example, she is informed of her child's problems, attends the IEP meetings, expresses her disagreement with the IEP team's conclusions, and requests revisions in the IEP." *Lafayette Sch. Dist., No. 10-04223 SI*, 2012 WL 398773, at *22 (N.D. Cal. Feb. 7, 2012), *aff'd in part, rev'd in part and remanded on other grounds*, 767 F.3d 842 (9th Cir. 2014), as amended (Oct. 1, 2014) *citing N.L. v. Knox County Schs.*, 315 F.3d 688, 693 (6th Cir.2003).

In the present case, the Parent presented insufficient evidence to establish that she was unable to participate in the IEP development process in a meaningful way, either due to any language issue or for any other reasons and the Hearing Officer's finding to the contrary is not supported by the record. The Parent in this case was invited to and attended each IEP meeting for the timeframe in question without a translator. (S-33 at 5 (4-24-14 IEP); S-45 at 8 (4-22-15 IEP); S-52 at 5 (4-22-16 IEP)). The school team explained that at each meeting, the IEP was reviewed and Parent offered the opportunity to ask questions. (N.T. p. 63 (Page)). In addition, not only did the Parent participate in the IEP process, she in fact raised concerns on several occasions about programing and her belief that the Student needed additional services, undercutting any suggestion that the Parent was unable to advocate for her child as suggested by the Hearing Officer. (N.T. pp. 92-93 (Pimentel); N.T. pp. 59-61, 67-68 (Page); S-25 at 4 (5-20-13 RR); S-26 at 13 (5-22-13 IEP); S-33 at 14 (4-24-14 IEP)). Moreover, the Parent routinely communicated in English with the District by e-mail and in the Student's communication log. (P-9 at 38, 47, 53-54 (e-mails); S-33 at 3, 5-8 12, 18-22 (Communication Log)). In addition, the school team testified that there was no evidence to suggest that the Parent did not understand or otherwise struggled to understand what was being communicated to her nor did she request that

documents or information presented at meetings be translated. (N.T. p. 56 (Page)). Lastly, the Parent participated fully in the Due Process Hearing without a translator and in fact at one point actually objected to a question, which further belies any claim that the Parent was unable to participate fully in the IEP process due to any language issues. (*See* N.T. pp. 107, 111 (Pimentel); N.T. p. 680 (Pimentel raising an objection). Simply put, there is no evidence that the Parent was in anyway denied meaningful participation in the IEP process. In addition, to the extent that it should be found that there was any such denial, it was minimal and did not affect the Student's education as the Parent was able to an in fact did raise concerns about the Student's programming. Accordingly, the Hearing Officer's finding that the Parent was denied meaningful participation, much less that this lead to a denial of a FAPE, is not supported by the record and, accordingly, should be reversed.

### D. THE HEARING OFFICER ERRED IN AWARDING THE PARENT'S REQUESTED PLACEMENT AS THE RECORD IS INSUFFICIENT TO ESTABLISH THAT THE PLACEMENT IS APPROPRIATE AND THERE IS INSUFFICIENT EVIDENCE TO ESTABLISH THAT THE PLACEMENT WOULD MAKE THE STUDENT WHOLE, MAKING THIS IS AN INAPPROPRIATE FORM OF COMPENSATORY RELIEF.

The Hearing Officer in this case took the extraordinary approach of awarding a prospective placement upon the basis that the placement was appropriate, despite any competent evidence to support this conclusion, as a form of compensatory education, again lacking any evidence of the appropriateness of the placement, and lacking any evidence that the placement would "make whole" the Student for the purported failure to provide a FAPE. While the awarding of a placement moving forward as a form of compensatory education is extraordinarily rare, in one case in which such an approach was taken, it was explained "[i]t is only logical that, to the extent compensatory educational services are available as a remedy, compensatory education in the form of placement in a private school at public expense is appropriate relief

*where it is demonstrated that FAPE is not possible in public schools.* In order to receive such relief, Plaintiffs *must demonstrate that FAPE is not possible in public schools and that the desired placement for that a private school placement may be appropriate.*" *Brantley By & Through Brantley v. Indep. Sch. Dist. No. 625, St. Paul Pub. Sch.,* 936 F. Supp. 649, 655 (D. Minn. 1996)(emphasis added). In addition, in another case, it has been found "[c]ompensatory education is not [Student]'s 'then-current educational placement' and thus may not be enforced by a preliminary injunction issued pursuant to IDEA's 'stay put' provision." *Penn Trafford Sch. Dist. v. C.F. ex rel. M.F.*, 2006 WL 840334, at *10 (W.D. Pa. Mar. 28, 2006). As a result, in order to even consider this as a remedy, it must be found that the Student cannot be educated in a public school placement and that the placement offered by the Parent is appropriate. For the reasons, detailed below, the Hearing Officer's Decision in this regard should be reversed.

   **1. The Hearing Officer erred by finding the placement at the Parent's chosen placement was appropriate as said finding is unsustainable upon the record created before the Hearing Officer and under the law.**

In the present case there is insufficient evidence to show that the requested placement is appropriate for the Student, much less that the Student cannot be educated in a public school setting. Moreover, the evidence in this case presents serious concerns about the proposed placement and, at the very least, shows there is nothing about the requested placement that is different than the placement proposed by the District.

First, the Parent completely failed to present competent evidence to establish that the proposed placement is appropriate. In support of this placement the Parent called several witnesses whose testimony on this topic was insufficient and inconsistent. Parent called Vicki Mayer, the Executive Director of Royer Greaves, who despite opining that the placement would be appropriate for the Student, has no experience working with students who are visually impaired, could not even identify the math or literacy curriculum used in the school, and was

unable to provide any details regarding what the school would provide to meet this Student's vision needs. (N.T. pp. 523, 524, 534-35 (Mayer)). Parent also called Joy McGowan, who opined that Royer Greaves was appropriate because it "has a variety of assistive technology devices and highly trained staff" (P-28 at 4 (McGowan Report)), but when called upon to expand on this struggled to identify what devices they had and admitted that she could not speak at all to the qualifications of the staff at this placement. (N.T. pp. 357-361 (McGowan)). Lastly, the Parent presented the testimony of Joseph Pardini, who does not appear to have any specialized background to offer opinions on the placement, whose credibility, for the reasons outlined below, must be questioned, and whose rationale for this placement failed to point to anything that could not be addressed at the District's proposed placement. (N.T. pp. 431-33 (Pardini)). Mr. Pardini did not speak to anyone who was working with the Student, he did not conduct any assessments of the Student, and his classroom observations must be viewed as suspect in light of the fact that he even got which IEP should have been implemented during his classroom visit wrong. (N.T. pp. 448-49, 453-54, 456 (Pardini); P-6 (Pardini Report)). In sum, the evidence was insufficient to establish that the placement was appropriate given that while the witnesses said the magic words that the placement was appropriate, they failed to be able to explain the same and, as a result, the Hearing Officer had insufficient evidence to find the placement appropriate and the Hearing Officer improperly found that it was.

Second, the evidence in this case presents significant concerns about the proposed placement. The District found that the placement might be as far away as almost two hours away. (N.T. p. 733 (Braxmeier)). There were concerns about the age range of the group of students in the class, which ranged from 7 to 12. (N.T. p. 735 (Braxmeier)). The classroom teacher at this placement advised that it was essentially an MDS class with vision services and related services

being provided not by the school but the local IU, which is no different than what has been proposed by the District. (N.T. p. 736 (Braxmeier)). When requested from District staff to explain what type of vision support student at the school received, staff at Royer Greaves either couldn't or wouldn't identify the same, in the same manner in which the programs executive director was unable to identify the curriculum used in her own program. (N.T. p. 736 (Braxmeier)). Likewise, staff at the school, when asked by District staff, were unwilling or unable to answer basic questions about what the Student's programming would look like or what literacy program or other curriculum were used at the school. (N.T. pp. 736-37, 740 (Braxmeier)). There were safety concerns, including possible outside tenants living in the school building and safety hazards in the gym. (N.T. p. 739 (Braxmeier)). While the school's executive director testified that in the hallways there are color contrasts, when the District observed this at the school and inquired about it, the school staff said they wished there was a reason of the different colors but there was not. (*Compare* N.T. p. 535 (Mayer); N.T. p. 743 (Braxmeier)). Needless to say if in fact this type of accommodation was actually put in place, that the school staff working in the building had no understanding of it is concerning. The testimony about these concerns was credible and in most respects uncontracted. The concerns are not trivial and raise significant questions about the appropriateness of this placement and concerns about the staff working in the placement. Nonetheless, the Hearing Officer simply ignored this testimony, which was improper.

Finally, even if one accepts that the placement requested by Parent was appropriate and ignores the serious concerns about the placement, the Hearing Officer does not even suggest, much less find that the Student could not be educated in the public school setting. To the

contrary the specific denials of a FAPE found by the Hearing Officer were things that the Hearing Officer found should and could have been done by the District in a public school setting

Accordingly, the Hearing Officer's finding that the placement at Royer Greaves was appropriate should be reversed or, in the alternative, because the Parent has failed to present sufficient evidence to establish that this placement is in anyway more appropriate than the placement offered by the District, much less that the Student cannot be educated in the public school, the finding by the Hearing Officer should be reversed.

**2. The awarding of a placement for an indefinite period of time as a form of compensatory education was improper and should be reversed.**

The Third Circuit has recently discussed compensatory education holding a hearing officer "may award it to whatever extent necessary to make up for the child's lost progress and to restore the child to the educational path he or she would have traveled but for the deprivation." *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 625–26 (3d Cir. 2015). However, in order to award compensatory education in this manner evidence of what will make the Student whole must be presented. *Thomas v. D.C.*, 407 F. Supp. 2d 102, 116 (D.D.C. 2005). In the present case, the Hearing Office award a placement for an unspecified period of time on the basis of that it would purportedly make the Student whole as a form of compensatory education, which was in error for several reasons. First, there is no evidence in this case that the placement in question would make the Student whole or how it would remedy the alleged denial of a FAPE. Second, given that the purpose of compensatory education is to rectify a past wrong, placement of Student at a private placement for an unspecified period of time is inconsistent with said purpose and is inequitable. Accordingly, it was improper for the Hearing Officer to order placement as a form of compensatory education.

**E. BECAUSE THE STUDENT WAS PROVIDED A FAPE, STUDENT SHOULD NOT BE AWARDED COMPENSATORY EDUCATION OR, TO THE EXTENT IT IS AWARDED, IT SHOULD BE MINIMAL.**

Assuming, for argument, that compensatory education is even contemplated, such an award requires a "finding that a child has received an inappropriate education." *M.C. v. Central Reg. Sch. Dist.*, 81 F.3d 389, 397 (3d Cir.), *cert denied*, 519 U.S. 866 (1996). The "right to compensatory education accrues when the school knows or should know that the student is receiving an inappropriate education." *Ridgewood Bd. of Educ. v. N.E.,* 172 F.3d 238, 250 (3d Cir. 1999). *Ridgewood* further provides that a school district has a reasonable period of time to rectify a known issue. *Id.* The Third Circuit has recently discussed compensatory education holding a hearing officer "may award it to whatever extent necessary to make up for the child's lost progress and to restore the child to the educational path he or she would have traveled but for the deprivation." *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 625–26 (3d Cir. 2015). However, in order to award compensatory education in this manner evidence of what will make the Student whole must be presented. *Thomas v. D.C.*, 407 F. Supp. 2d 102, 116 (D.D.C. 2005).

In the present case, as noted above, most if not all of the findings of the Hearing Officer as to the alleged denial of a FAPE are not supported by record. However, even if one agrees that at some level the Student was denied a FAPE a minimal level of compensatory education should be awarded. First, as noted above, contrary to the findings of the Hearing Officer, vision and physical therapy were in fact appropriately provided and, therefore, no award should be made for the same. Second, with respect to the issue of instruction in the Student's native language, the Hearing Officer entered no finding as to the amount that should have been provided and the Student in fact understood English according to the documentation presented and, as a result, a minimal level of compensatory education should be awarded. Finally, with respect to the alleged

failure to provide instruction in the areas of activities of daily living an appropriate remedy would be between two hours a week and ten hours a week, *see e.g. Oskowis v. Sedona Oak-Creek Unified Sch. Dist. #9*, 2016 WL 1118038, at *12 (D. Ariz. Mar. 22, 2016)(awarding 100 minutes per week in compensatory education for failure to address this skill) for an award of between 160 and 800 hours of compensatory education, given 40 weeks in a school year. Accordingly, while it is respectfully submitted that no award of compensatory education should be entered, to the extent that one is found, an award of compensatory education between 80 and 1000 hours for the timeframe under review would appear appropriate.

Accordingly, no compensatory education should be awarded or a small to moderate amount should be awarded rather than the awarding of a placement at a private school chosen by the Parents for an unspecified period of time.

### F. THE HEARING OFFICER ERRED BY FINDING THAT THE DISTRICT VIOLATED SECTION 504 AND PENNSYLVANIA CODE CHAPTER 15 BY ENGAGING IN DISCRIMINATION AGAINST STUDENT ON THE BASIS OF DISABILITY.

In the present case, the Hearing Officer's finding that the District violated Section 504 and Pennsylvania Code Chapter 15 are predicated upon the finding of a denial of a FAPE and the other procedural violations found by the Hearing Officer. (*See* H.O. Dec. at 18-19). Given that the findings upon which the Hearing Officer found these various violations, for the reasons noted above, should be reversed, so should the Hearing Officer's finding that the District violated Section 504 and Chapter 15. As a result, to the extent that the Hearing Officer's findings are reversed in various aspects addressed above, the Hearing Officer's finding with respect to Section 504 and Chapter 15 should likewise be reversed. Therefore, the Hearing Officer's finding that Section 504 and Chapter 15 were violated by the District should be reversed.

## VI.   <u>CONCLUSION</u>

Accordingly, for the reasons detailed above, the District's Motion for Judgment on the Administrative Record should be granted, the Hearing Officer's Decision reversed, and an appropriate Order entered.

Respectfully submitted,

Dated: <u>July 17, 2017</u>   KING, SPRY, HERMAN, FREUND & FAUL

<u>/s/ Timothy E. Gilsbach</u>
Timothy E. Gilsbach, Esquire
Tgilsbach@kingspry.com
ID No. 92855
John E. Freund, III, Esquire
jef@kingspry.com
ID No. 25390
One West Broad Street
Suite 700
Bethlehem, PA 18018
610.332.0390

*Counsel for Easton Area School District*